UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00060-TBR

ERICA YOUNGBLOOD                                                                                  Plaintiff

v.

THE CITY OF PADUCAH, *et al.*                                                              Defendants

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Dismiss (DN 29). Plaintiff has responded (DN 35). Defendant has replied (DN 36). This matter is now ripe for adjudication. For the reasons that follow, Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Erica Youngblood is the daughter of Eric C. Youngblood and Melissa Youngblood. This action arises out of the execution of a search warrant at the Youngblood's home by the Paducah Police Department.

Plaintiff alleges that on the morning of October 31, 2008, she was preparing for school. At 6:07 a.m., Assistant Chief Danny Carroll and Detective Troy Brown entered her residence. Carroll and Brown interrupted Plaintiff while she was in the bathroom and yelled at her to "get in the living room and sit down." (DN 26-1). For the next twenty-seven minutes, Carroll and Turner "stood guard" over Plaintiff and her family. At 6:34 a.m., "approximately thirteen" members of the Drug and Vice Enforcement ("DAVE") Unit entered "like a herd of wild Bison." (DN 26-1). As they entered, officers "pointed and/or trained their military style weapons on my family and me." (DN 26-1). Plaintiff alleges she was detained for "what seemed like sixty (60)

1

minutes or so." (DN 26-1). Plaintiff was "in tears" during the ordeal. Upon returning to school she was humiliated and teased by fellow students. (DN 26-1). Plaintiff's parents were arrested and charged with possession of marijuana.

Plaintiff's parents, Eric C. Youngblood and Melissa Youngblood previously filed a lawsuit ("*Youngblood I*") alleging the Paducah Police Department violated their substantive and procedural due process rights, among other claims. *Youngblood v. City of Paducah*, No. 5:10-CV-00206-R, 2012 WL 529871 (W.D. Ky. Feb. 17, 2012). This Court granted summary judgment in favor of the City of Paducah, the sole defendant in *Youngblood I*. Plaintiff Erica Youngblood was a minor at the time of the events. Plaintiff was also not a party to *Youngblood I*. After reaching the age of majority, Plaintiff filed this action.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

2

DISCUSSION

Defendants raise five arguments for dismissing Youngblood's claims. The Court will first address Defendants' arguments that (I) *res judicata* bars Youngblood's claims and (II) the statute of limitations bars Youngblood's federal claims against Defendants John Tolliver, Joe Hayes, and Troy Turner. The Court will then address Defendants' arguments that (III) the Court has previously dismissed Youngblood's § 1985 claims and her amended complaint still fails to state this claim; (IV) Youngblood's excessive force claim fails as she does not allege that any person used force against her; and (V) Youngblood fails to state a claim for emotional distress.

As Youngblood is proceeding *pro se*, the Court shall hold the allegations in her complaint "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### I.   *Res Judicata*.

Defendants argue that Youngblood is barred by the doctrine of *res judicata* from relitigating issues decided in *Youngblood I*. The Court disagrees. As Youngblood was not a party to *Youngblood I*, the decision in that case does not bind Youngblood.

"Res judicata consists of two concepts, claim preclusion and issue preclusion (also called collateral estoppel)." *Moorhead v. Dodd*, 265 S.W.3d 201, 203 (Ky. 2008). "Claim preclusion bars subsequent litigation between the same parties or their privies, on a previously adjudicated cause of action." *Id*. (*citing Buis v. Elliott*, 142 S.W.3d 137, 139-40 (Ky. 2004)). "Issue preclusion, on the other hand, precludes the relitigation of an issue that was actually litigated and decided in a prior proceeding." *Id*.

Claim preclusion requires three elements: "(1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011). Issue preclusion requires five elements: "(1) at least one party to be bound in the second case must have been a party in the first case; (2) 'the issue in the second case must be the same as the issue in the first case'; (3) 'the issue must have been actually litigated'; (4) 'the issue was actually decided in that action'; and (5) 'the decision on the issue in the prior action must have been necessary to the court's judgment' and adverse to the party to be bound." *Id*. (quoting *Yeoman v. Commonwealth*, 983 S.W.2d 459, 464–65 (Ky.1998)).

In *Youngblood I*, Eric and Melissa Youngblood asserted claims of defamation, § 1985 conspiracy, outrage, negligent supervision, and substantive and procedural due process violations against the City of Paducah. These claims arose out of the same set of facts upon which Plaintiff Erica Youngblood, their daughter, relies upon for her claims. In *Youngblood I*, this Court held the "claims that Plaintiffs have pleaded are substantively deficient" and granted summary judgment in favor of the City of Paducah. *Youngblood I*, 2012 WL 529871, at *1. Erica Youngblood was not a party to that case. Although several Defendants in this case were discussed in the *Youngblood I* complaint, no party besides the City of Paducah was also a party to *Youngblood I*.

While Defendants are correct in noting that many of these issues Youngblood raises were previously discussed in *Youngblood I*, the Defendants' *res judicata* argument nevertheless fails because Erica Youngblood was not a party to *Youngblood I*.[1] "A person who was not a party to

---

[1] The Court declines to interpret Eric and Melissa Youngblood's reference in their complaint to the stress caused to their family as intending to assert claims on Erica Youngblood's behalf.

4

a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008); *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 870 (6th Cir. 2015). Therefore, *res judicata* generally does not bar a non-party from asserting claims because to do so "runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor*, 553 U.S. at 892-93 (quoting *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996)). Although the Supreme Court noted six exceptions to this general rule, none of them apply to this case.[2] *Id.* at 893. Specifically, the fact that Erica Youngblood is the daughter to the plaintiffs in *Youngblood I* is insufficient to bind her to that case. *See* 1B Moore's Federal Practice 0.414(11), at 1660 (2d ed. 1974) ("The rule is generally recognized that privity for purposes of judicial finality, does not normally arise from the marital relationship, nor from the relationship between parent and child"); *see also Brown v. Terry*, 375 So. 2d 457, 458 (Ala. 1979). Accordingly, the Court finds that Youngblood's claims are not barred by this Court's decision in *Youngblood I*.

## II.     Statute of Limitations.

The Defendants next argue that the one-year statute of limitations bars Youngblood's § 1983 and § 1985 claims against John Tolliver, Joe Hayes, and Troy Turner. The Court agrees.

Although § 1983 and § 1985 claims are federal claims, the statute of limitations for these claims is governed by state law. *Carmicle v. Weddle*, 555 F.2d 554, 555 (6th Cir. 1977) ("Because neither § 1983 nor § 1985 contains a statute of limitations a 'federal district court

---

[2] The exceptions are: (1) "person who agrees to be bound by the determination of issues in an action between others"; (2) "pre-existing 'substantive legal relationships'" such as bailee and bailor; (3) in special circumstances, such as a class action, the non-party was "adequately represented;" (4) the non-party "assumed control" over the litigation; (5) attempt to relitigate issues through a proxy; and (6) where a "special statutory scheme" expressly forecloses successive litigation. (citations and punctuation omitted) *Taylor*, 553 U.S. at 893-95.

must apply the statute of limitations of the state where it sits which would be applicable in the most closely analogous state action to determine the time within which the cause of action must be commenced") (citation omitted). Accordingly, Kentucky's one-year statute of limitations governs these claims. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 181-2 (6th Cir. 1990).

Youngblood was a minor at the time of the underlying events in this case. Therefore, the statute of limitations was tolled until Youngblood reached the age of majority. KRS § 413.170. Youngblood reached the age of 18 on March 19, 2014. Thereafter, to be timely, Youngblood must have asserted her claims against Defendants Tolliver, Hayes, and Turner within one year. Youngblood filed her original complaint on March 18, 2015. (DN 1). However, this complaint did not mention Tolliver, Hayes, or Turner.[3] Youngblood's first amended complaint mentioned Tolliver, but it was not filed until May 26, 2015. (DN 6). Youngblood's second amended complaint included claims against Hayes and Turner, but it was not filed until November 25, 2015. (DN 26). As Youngblood did not assert claims against Tolliver, Hayes, or Turner until more than one year after she reached the age of majority, the one-year statute of limitations bars Youngblood's § 1983 and § 1985 claims against those Defendants.

### III.     Youngblood's § 1985 Claim.

The Defendants argue Youngblood's claim for conspiracy pursuant to 42 U.S.C. § 1985(3) must be dismissed because this Court previously dismissed that claim. A viable

---

[3] Nor does the complaint mention "unknown police officers" or otherwise contain a reference that could be construed as referring to these Defendants. Even if the complaint did contain such a reference, the "naming of 'unknown police officers' in the original complaint does not save the pleading" from the statute of limitations. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties"); *see also Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); *Bradford v. Bracken County*, 767 F. Supp. 2d 740, 749 (E.D. Ky. 2011).

claim under § 1985(3) requires: "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Furthermore, the plaintiff "must also establish that the conspiracy was motivated by a class-based animus." *Id*; *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").

This Court previously held that Youngblood failed to plead the "class-based animus" element of a § 1985(3) claim and terminated the Paducah Police Department as a party. (DN 9). The Court held that Youngblood "must allege that she possesses the characteristics of a discrete and insular minority, such as race, national origin, or gender," and Youngblood "must also put forth specific facts indicating there was a conspiracy motivated by class-based, invidiously discriminatory animus." (DN 9). Youngblood subsequently amended her complaint to claim "at all times relevant herein [she] was a 'bi-racial' citizen of the United States." (DN 26). While this satisfies the requirement that Youngblood be a member of a minority, Youngblood still has claimed no set of facts which would show that the Defendants' actions were motivated by discriminatory animus. Accordingly, the Court will dismiss Youngblood's claims pursuant to § 1985(3).

### IV. Excessive Force.

Defendants also move to dismiss Youngblood's excessive force claim. The Fourth Amendment to the Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

"A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable." *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011).

"A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." (citation and punctuation omitted) *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

However, "'[s]eizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989); *Byars v. United States*, 273 U.S. 28, 33 (1927) ("The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies"). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." (citation omitted) *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989). "The 'reasonableness' of a

particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. At a minimum, "under the Fourth Amendment's reasonableness standard, excessive force claims generally require at least *de minimis* physical injury." *Rodriguez v. Passinault*, 637 F.3d 675, 687 (6th Cir. 2011). "The point of the *de minimis* rule is to make it clear that the Constitution does not become a 'font of tort law' that the federal courts 'superimpose[ ] upon whatever systems' the States already have." *Leary v. Livingston Cty.*, 528 F.3d 438, 445 (6th Cir. 2008) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

Youngblood claims that the police entered "like a herd of wild Bison" and pointed "military style weapons" at her. (DN 26-1). These allegations show that Youngblood was seized, as Youngblood did not believe she could leave due to the police officers' show of force. However, Youngblood's excessive force claim must fail because she has not alleged even a *de minimis* physical injury. The police are authorized in making a show of force in the course of an arrest. *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). An excessive force claim requires actual physical harm, and that harm must have been more than *de minimis*. *Compare Leary*, 528 F.3d at 443 ("The undisputed facts in this case show that Leary's single allegation of force--that McGuckin hit him '[i]n the back of the neck' with the side of his hand, performing 'a karate chop kind of deal'--was *de minimis*"); *with Morrison v. Bd. of Trs.*, 583 F.3d 394, 407 (6th Cir. 2009) (finding plaintiff's allegations were sufficient where she "specifically claims Officer Celender repeatedly pushed her face to the ground every time she attempted to speak while she was already handcuffed, lying down, and compliant with the officer's commands"). If

the plaintiff has not alleged that any force was used against her, then an excessive force claim may be dismissed at the motion to dismiss stage. *See e.g. Khansari v. City of Houston*, 14 F. Supp. 3d 842, 862-63 (S.D. Tex. 2014) (holding parents who witnessed their son get tasered and had officers "drawing and pointing weapons and shouting" at them failed to state a claim for excessive force); *Murphy v. Pizarrio*, 1995 WL 565990, at *3 (S.D.N.Y. Sept. 22, 1995) ("mere verbal abuse is not a § 1983 violation" and "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations") (citation and punctuation omitted). Accordingly, because Youngblood does not allege that physical force was used against her the Court must dismiss her excessive force claim.

### V. Failure to State a Claim on Remaining Claims.

Finally, the Court addresses Defendants' request to dismiss Youngblood's remaining claim for intentional infliction of emotional distress.[4] A prima facie case of intentional infliction of emotional distress, or outrage, requires that a plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (*citing Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)). Courts have "set a high threshold for outrage claims." *Id* at 791. Under Kentucky law, "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

---

[4] In her affidavit attached to her complaint, Youngblood titles each section after a claim (e.g. "Complicity of Intentional Infliction of Emotional Distress"). (DN 26-1). The Court construes these headings as corresponding to and repeating claims that Youngblood has made in her complaint.

a civilized community.'" *Seitz*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts § 46(1) cmt. d (1965)).

The Court "make[s] the initial determination whether the conduct complained of can reasonably be regarded as so extreme and outrageous as to permit recovery." *Whittington v. Whittington*, 766 S.W.2d 73 (Ky. Ct. App. 1989). Courts generally dismiss claims of outrage when a jury could not reasonably conclude a defendant acted with sufficient malice from the facts alleged. *See e.g.*, *Hines v. Hiland*, No. 5:09-CV-00075-R, 2011 U.S. Dist. LEXIS 70229, 2011 WL 2580350, at *4 (W.D. Ky. June 28, 2011); *Graves v. Bowles*, No. 1:07-CV-00207-M, 2010 U.S. Dist. LEXIS 10001, 2010 WL 497719, at *6 (W.D. Ky. Feb. 5, 2010); *Bielefeld v. Haines*, No. 3:04-CV-151-R, 2005 U.S. Dist. LEXIS 8176, 2005 WL 6122527, at *10 (W.D. Ky. Apr. 7, 2005).

In this case, the police officers' actions which form the basis for Youngblood's claim were taken during the execution of a search warrant. As the Supreme Court has noted, "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981). "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id*. Acts which may be unreasonable in one context—a stranger entering a home and pointing weapons at the occupants—may be reasonable in another. While not binding, in *Youngblood I* this Court held that the police officers' actions did not support a claim for intentional infliction of emotion distress. *Youngblood I*, 2012 U.S. Dist. LEXIS 20310 *17 ("executing a magistrate-approved search warrant on a residence and then arresting the occupants when narcotics are discovered is not the type of provocation required to succeed on a claim for outrage). This Court

11

has previously held that although being "searched and arrested may be unpleasant experiences, they do not necessarily equate to outrageous conduct on the part of the arresting officer." *Id.* (*citing Lewis v. Meyers*, No. 5:09-CV-00156-R, 2010 U.S. Dist. LEXIS 100585, 2010 WL 3829200, at *4-5 (W.D. Ky. Sept. 24, 2010)); s*ee also Woods v. Town of Danville, W.V.*, 712 F. Supp. 2d 502, 511 (S.D.W. Va. 2010) (finding a mistaken arrest in which an officer lifted the suspect by his handcuff chain was not outrageous conduct). Similarly, being detained while a search is conducted does not, without more, rise to the level of outrageous conduct. *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 465 (6th Cir. 2014) (unpublished) (holding plaintiff did not have a claim for outrage where she was detained for forty minutes and strip searched by Kohl's employees who suspected her of shoplifting). In this case, the police officers' show of force and detention of Plaintiff while her parents' home was searched was not outrageous.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Dismiss (DN 29) will be GRANTED. A separate judgment and order will be issue.

cc:    counsel;

       Erica Youngblood
       P.O. Box 187
       Georgiana, AL 36033